UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:16-cr-00244-KJM |
| Plaintiff, | |
| v. | ORDER |
| ABHIJIT PRASAD, | |
| Defendant. | |

       Defendant Abhijit Prasad has been charged with 31 counts of Visa Fraud and two counts of Aggravated Identity Theft. Indictment, ECF No. 1 (charging violations under 18 U.S.C. §§ 1028A(a)(1) & 1546(a)). Trial is scheduled for September 24, 2018. Mr. Prasad moves to transfer venue to the Northern District of California. Mot., ECF No. 39. The government opposes. Opp'n, ECF No. 46. The court heard argument on July 30, 2018. H'rg Mins., ECF No. 55. As explained below, the motion is GRANTED.

I.     BACKGROUND

       Mr. Prasad is accused of operating a fraudulent visa mill from 2011 through 2015, through which he allegedly misrepresented facts to secure nonimmigrant visas for information technology ("IT") workers in India. *See* Indictment at 1, 5-6. Specifically, Mr. Prasad operated

an IT employment staffing company from a home office in Tracy, California, through which he applied for dozens of specialty occupation worker visas under the federal H-1B visa program. *Id.* at 2. To obtain the visas, he represented that each worker was involved in a legitimate project for third-party companies called "end-clients," with Mr. Prasad's company serving as the visa recipients' employer on paper. *Id.* at 1. The government alleges no such end-site projects existed, and instead Mr. Prasad himself recouped the IT workers' eventual income. *See id.* at 6-7.

Mr. Prasad was indicted on all 33 counts on December 22, 2016, and arraigned the next day. *See* ECF Nos. 3, 5. After a December 28, 2016 detention hearing, Mr. Prasad was granted conditional pre-trial release. *See* ECF No. 11 at 1; *see also* ECF No. 13-1. Almost eighteen months later, on May 3, 2018, Mr. Prasad's pre-trial release was revoked based on evidence that he continued to operate his visa mill. Mot. to Revoke, ECF No. 28; *see* Detention Order, ECF No. 32. He has since been detained in the Eastern District pending trial.

Trial is scheduled to begin on September 24, 2018, with a trial confirmation hearing currently set for August 6, 2018. ECF No. 55. The motion cutoff date for all defense Rule 12 motions, as proposed by the parties and approved by the court, was June 27, 2018. ECF No. 25 (approving schedule outlined in ECF No. 24). Before the cutoff, on June 18, 2018, Mr. Prasad filed this motion to transfer venue to the Northern District of California for the convenience of himself and the witnesses. *See* Mot. The government opposes, arguing the motion is untimely and that the proffered justifications for transfer are inadequate. *See* Opp'n. Mr. Prasad filed a reply. Reply, ECF No. 48. Both parties filed supplemental briefing. Def. Suppl. Reply, ECF No. 49; Gov't Suppl. # 1, ECF No. 54; Gov't Suppl. # 2, ECF No. 56 (filed after hearing).

II. <u>DISCUSSION</u>

Federal Rule of Criminal Procedure 21(b) provides that a court may, upon a defendant's motion, "transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b). Congress left the choice of venue for criminal

2

prosecutions to the "discretion of the court." *See* Fed. R. Crim. P. 21, Advisory Comm. Notes, 1944, n.2; *see also United States v. Testa*, 548 F.2d 847, 856 (9th Cir. 1977).

A. <u>Timing</u>

The government argues as a threshold matter the motion is untimely. *See* Opp'n at 4. "A motion to transfer may be made at or before arraignment or at any other time the court or these rules prescribe." Fed. R. Crim. P. 21(d). The parties agree the Rules do not prescribe another time for filing such a motion, and no authority appears to set an express time limit for the bringing of Rule 21(b) motions. As noted, the court here set a deadline for filing Rule 12 motions generally; Mr. Prasad filed the instant motion based on a different rule to transfer nine days before that deadline lapsed. ECF No. 25.

The Ninth Circuit has interpreted Rule 21(d) as suggesting "the court may decline to entertain a late motion." *United States v. Polizzi*, 500 F.2d 856, 901 n.10 (9th Cir. 1974) (affirming trial court's decision to deny motion where trial was "imminent," without defining imminent). The Ninth Circuit offers little other guidance on when to deny Rule 21(b) motions based on its timing.

In answering the timing question, other courts have focused on how long the motion was filed after arraignment, how imminent the trial is, and what reasons, if any, justify the delay. *See United States v. Kopituk*, 690 F.2d 1289, 1321 n.29 (11th Cir. 1982) (noting the timing alone would justify denying a Rule 21(b) motion filed three weeks before trial); *United States v. Taylor*, 562 F.2d 1345, 1363 (2d Cir. 1977) ("Taylor's motion to transfer was not made until the trial was two weeks old and the trial court reasonably denied the motion as untimely."); *Cagnina v. United States*, 223 F.2d 149, 154 (5th Cir. 1955) ("the motion for transfer, having been filed many weeks after arraignment and not until about a week before trial, was made too late."); *Shurin v. United States*, 164 F.2d 566, 570 (4th Cir. 1947) (finding it would have been an "abuse of discretion" to transfer case where "defendant delayed making [the motion] for more than a year after the indictment had been found against him and until after the case had twice been set for trial . . . and [nothing relevant to a venue transfer] had occurred in the meantime"); *United States v. Wolfson*, 269 F. Supp. 621 (S.D.N.Y. 1967) (denying motion on merits not on timeliness

grounds, but noting "this Court feels constrained to point out" that the motion was filed "about seven months after the indictment, and on the eve of trial").

Here, Mr. Prasad was arraigned on December 23, 2016. ECF No. 5. He waited almost eighteen months, until June 18, 2018, to file this motion to transfer. Nonetheless, Mr. Prasad filed his motion before the motion deadline set by the court based on the parties' stipulation, and three months before the trial's anticipated start date. *See* ECF No. 55 (listing dates). Mr. Prasad offers a reason for the delay: The government has yet to tender an official witness list, but defense counsel's ongoing discovery review, focused since new counsel's assignment to the case, shows most witnesses reside in the Northern District and no witnesses are in the Eastern District, save Mr. Prasad if he decides to testify. Reply at 2. Mr. Prasad also argues trial in the Eastern District would make it difficult for his brother, who lives in the Northern District, to attend trial or otherwise support him; this consideration took on added significance after his May 3, 2018, revocation of pretrial release and subsequent incarceration in the Sacramento County jail. *Id.* at 3; *cf. United States v. Radley*, 558 F. Supp. 2d 865, 877 (N.D. Ill. 2008) (considering convenience of defendants and their families).

Because there is no line in the sand after which a motion to transfer venue becomes untimely, Mr. Prasad filed this motion by the deadline for motions set by this court, and considering trial is still some time off, the court declines to deny the motion as untimely.

B. *Platt* Balancing Test

When moving to change venue under Rule 21(b), the defendant bears the burden to show trial would be more convenient in another forum. *Testa*, 548 F.2d at 856. Ten factors guide the analysis: (1) Where the defendant resides; (2) where possible witnesses reside; (3) where the relevant events happened; (4) where relevant documents and records are; (5) potential disruption to a defendant's business if transfer is denied; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket congestion; and (10) other special considerations. *Platt v. Minn. Mining & Manuf. Co.*, 376 U.S. 240, 243-44 (1964). The Ninth Circuit has cited the *Platt* factors with approval, *see Testa*, 548 F.2d at 856-57; *Polizzi*, 500 F.2d at 900, but has not offered detailed guidance for applying them. Generally,

courts treat no single factor as dispositive, but instead aim to "strike a balance and determine which factors are of greatest importance." *United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990) (citation, quotations and alteration omitted); *see, e.g.*, <u>United States v. Hess</u>, 302 F.R.D. 283, 284 (D. Mass. 2014) (citing *Maldonado-Rivera*). As discussed below, a few factors are neutral as applied to this case but most favor transfer.

### 1. Defendant's Location is a Neutral Factor

Although *Platt* dealt with corporate defendants, this factor has been applied to individual defendants too. *See, e.g.*, *United States v. Daewoo Indus. Co.*, 591 F. Supp. 157, 159 (D. Or. 1984); *United States v. Aronoff*, 463 F. Supp. 454, 457 (S.D.N.Y. 1978). The idea that the trial should occur either where the crime occurred or where the defendant resides is "a safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place." *Platt*, 376 U.S. at 245. Otherwise, the defendant's location has "no independent significance in determining whether transfer to that district would be 'in the interest of justice', although it may be considered with reference to [other] factors." *Id.* at 245-46; *Polizzi*, 500 F.2d at 900 (stating residence of defendant is a factor to be considered, but it is not controlling).

Here, the government cites Mr. Prasad's incarceration in the Eastern District as a basis to keep the trial here. Opp'n at 6. Unlike a residence, incarceration shows no personal connection to the district: Wherever he is tried, Mr. Prasad will be transported from a local detention facility. *See* Mot. at 4 ("It is of no matter that Prasad could be transferred to a jail in the Northern District."). Mr. Prasad's location is neutral.

### 2. Location of Witnesses Strongly Favors Transfer

Mr. Prasad argues many potential witnesses live or work within the Northern District. *See* Mot. at 5-7 (listing potential witnesses). The government does not rebut this showing, and at hearing conceded virtually all if not all witnesses reside in the Northern District, closest to either the San Francisco or San Jose courthouse. The court gives this factor the greatest weight. *See United States v. Ferguson*, 432 F. Supp. 2d 559, 564 (E.D. Va. 2006) (emphasizing importance of this factor; noting "location of potential witnesses will result in a substantial balance of inconvenience" because most reside in the transferee district); *United States v.*

5

*McDonald*, 740 F. Supp. 757, 762 (D. Alaska 1990) (same; granting motion to change venue because "almost half of [the] witnesses reside" in the transferee district); *United States v. Hurwitz*, 573 F. Supp. 547, 552-55 (S.D.W. Va. 1983) (same); *cf. United States v. Acuna*, No. CRIM.07-00615 SOM, 2008 WL 1722129, at *4 (D. Haw. Apr. 14, 2008) (denying motion in large part because a "majority of the Government's substantive witnesses" were within the original forum).

To meet his burden, Mr. Prasad must provide more than a bald statement of numbers and the general location of witnesses. *See, e.g.*, *Testa*, 548 F.2d at 856 (affirming denial of Rule 21(b) motion in part because defendant did not list potential witnesses or give nature of their testimony); *Lindberg v. United States*, 363 F.2d 438 (9th Cir. 1966) (court did not abuse discretion in denying Rule 21(b) motion where defendant neither named nor described witnesses he claimed were within transferee district); *Daewoo*, 591 F. Supp. at 160 (emphasizing importance of providing details as to witness identities and locations). Mr. Prasad has satisfied this requirement. Because the government is not yet required to tender its official witness list, and has not, Mr. Prasad's arguments are based on the defense discovery to date. *See* Gov't Suppl. # 2 at 1 ("The government does not yet have an estimated number of trial witnesses, but offers an approximation of 10 to 30 witnesses at this time."). Mr. Prasad has filed a list of more than 80 potential witnesses, 48 of whom live or work in the Northern District; not one lives or works in the Eastern District. *See* Ex. A, ECF No. 41 (sealed) (listing some addresses in other parts of state and nation and other addresses as unknown). He argues the visa recipients listed in the Indictment almost all work or live within the Northern District and not one lives or works within the Eastern District. *See* Indictment at 3-5; Mot. at 5. As for the visa fraud counts, which pertain to two beneficiaries referred to as R.P. and R.A., Mr. Prasad contends R.P. lives and works in the Northern District and that R.A.'s address is unknown. *See* Ex. A, lines 1, 42; *see also* Indictment at 5; Mot. at 5. And the two counts charging identify theft involve a victim listed as "Person 1," who, according to the defense, also lives and works in the Northern District. *See* Indictment at 5-6; Mot. at 5.

The charged conduct also involved several companies from which additional witnesses will likely be drawn. *See* Ex. B, ECF No. 39-2 (listing companies); Mot. at 6. Most prominent are Cisco Systems and Ingenuus, both of which are located in the Northern District. *See* Indictment (describing Cisco's involvement in connection with Counts 1-7, 10-18, 22-33, and Ingenuus's involvement in connection with Counts 8-9 and 19-21); *see also* Ex. B (showing addresses for Cisco and Ingenuus within the Northern District); *see also* Mot. at 6 (listing possible Cisco witnesses as Shilpa Patel, Ravi Korlimarla and Rishi Kabra; and possible Ingenuus witnesses as Bill Wang and Vivek Prasad).

As noted, the government concedes no potential witnesses other than Mr. Prasad reside within the Eastern District, arguing instead that Mr. Prasad has not shown sufficient inconvenience to witnesses, addressed further below. *See* Opp'n at 4-5.

This factor strongly favors transfer.

3. <u>Location of Events Favors Transfer</u>

The government emphasizes that Mr. Prasad's former home office was in the Eastern District. Opp'n at 8 ("While relevant events took place across the Bay Area, Prasad concedes that he lived in and operated his visa fraud business from Tracy, California."). But Mr. Prasad contends that he merely used his phone and laptop in his home office, and that the bulk of the relevant conduct occurred in the Northern District, where he travelled to meet with company representatives, visa recipients, paralegals, attorneys, payroll service providers, and medical benefit administrators. *See* Mot. at 7-8 (listing potential employees, paralegals and attorneys). The government does not fundamentally rebut this argument. *See* Opp'n at 8 ("Events relevant to the trial occurred in both the Eastern and Northern Districts of California."). And the defense position placing emphasis on person-to-person meetings is consistent with the case law. *Cf. United States v. Menendez*, 109 F. Supp. 3d 720, 729 (D.N.J. 2015) (denying motion to transfer to Washington; noting although "many of the alleged emails [were sent] from Washington, the geographic origin of most emails . . . may be important for what they say, not from where they were sent."); *see also* <u>Reg'l Local Union Nos. 846 & 847 v. Jayco Steel Servs., Inc.</u>, No. 3:13-CV-02267-ST, 2015 WL 2123757, at *6 (D. Or. Apr. 29, 2015) (transferring case

from Oregon to Texas; explaining core issues were rooted not in the "ministerial" acts that took place in Oregon, but rather in the "events that took place in Texas [which] involve[] several questions of fact that will require witness testimony"); *United States v. Coffee*, 113 F. Supp. 2d 751, 755 (E.D. Pa. 2000) (transferring case from Pennsylvania to Ohio; noting only connection to Pennsylvania was "telephone calls, faxes and packages sent from Ohio"); *United States v. Haley*, 504 F. Supp. 1124, 1128 (E.D. Pa. 1981) (transferring case from Pennsylvania to Georgia; noting "Georgia . . . appears to be the 'nerve center' of the alleged illicit operations").

Based on this record, the court finds most relevant events occurred within the Northern District. This factor favors transfer.

### 4. Location of Documentary Evidence Slightly Favors Transfer

Because documents in the electronic age can be "easily transported," their location is weighed only slightly in a venue transfer analysis. *See United States v. Robinson*, No. CRIM 09-00031, 2010 WL 3087446, at *5 (D. N. Mar. Is. July 29, 2010). Nonetheless, this factor favors transfer for the reasons explained above: Virtually all witnesses and two of the main companies allegedly involved in the visa scheme are in the Northern District, and not one likely witness or company is within the Eastern District, now that Mr. Prasad's home office is no longer in operation. *See* Mot. at 9 (noting government forced Mr. Prasad to close his business); Opp'n at 8 (referencing Mr. Prasad's home office only in the past tense). The defense also argues the case agent, Richard Lin, works in the Northern District and that all documents and records seized from Mr. Prasad are being held in Agent Lin's office, including the search warrant returns. Mot. at 2, 7. The government argues no differently. *See generally* Opp'n.

Because most relevant documents and records appear to be in the Northern District, and none appear to be stored in the Eastern District, this factor slightly favors transfer.

### 5. Location of Counsel a Neutral Factor

Counsel for both parties are in the Eastern District, but they are able and willing to travel to the Northern District without delay, and the government has informed the court that staff from the Northern District U.S. Attorney's Office is available to assist. *See* Mot. at 11; Gov't Suppl. # 2 at 1-2. This factor is therefore neutral.

8

### 6. Access to Place of Trial Favors Transfer

Given that virtually all witnesses reside in the Northern District, access to a trial venue in the Northern District would appear to be more convenient for those witnesses. For the few witnesses who may come from elsewhere, it appears traveling to the Northern District is at least equally convenient to traveling to the Eastern District, as both districts house major airports. *See United States v. Napoli*, No. C 10-00642 CRB, 2011 WL 1303571, at *2 (N.D. Cal. Apr. 5, 2011) (deemphasizing relevance of this factor because "both San Francisco and Philadelphia are accessible major cities."); *cf. Robinson*, 2010 WL 3087446, at *7 (emphasizing the ease of accessing Washington D.C., which has three major airports, compared to the Northern Mariana Islands). While the parties argue back and forth about the relative costs of air travel, hotel accommodations and vehicle travel on Northern California's congested roads, without a confirmed witness list the court is not in a position to make a more detailed finding at this point.

This factor favors transfer.

### 7. Expense to the Parties Favors Transfer

The government argues in opposition that it will be expensive to reserve hotel rooms in the Northern District for the government's trial team, if rooms even are available. Gov't Suppl. # 1 at 1 (estimating no hotel availability at government rate a limited availability at higher rates). Following hearing, and as alluded to above, the government has reported its Northern District office can supply a paralegal and second-chair attorney, thus reducing its hotel fees and room availability concerns. *See* Gov't Suppl. # 2 at 1-2; *cf. Robinson*, 2010 WL 3087446, at *6 ("in the event of a transfer, the prosecution would likely have support services and other resources available to them from the offices of the United States Attorney [in either venue.]"); *see also United States v. Lopez,* 343 F. Supp. 2d 824, 837 (E.D. Mo. 2004) (same). Expense to the parties is but one factor, in any event, and as discussed above, the overall expense of maintaining the trial here appears likely to outweigh the expense of transferring the trial to the Northern District.

Moreover, in a motion to transfer, which primarily focuses on minimizing inconvenience for the defense, each party's ability to shoulder the expense matters more than the existence or size of that expense. *See McDonald*, 740 F. Supp. at 762 ("The primary concern of

Rule 21(b) is to 'minimize the inconvenience to the defense'") (quoting 2 C. Wright, Federal Practice and Procedure, Criminal 2d § 343, at 260 (1982)); *see, e.g.*, *United States v. Luros*, 243 F. Supp. 160, 175 (N.D. Iowa 1990) (emphasizing ability to bear the cost, not existence or amount of cost); *Daewoo*, 591 F. Supp. at 164 (same); *United States v. Culoso*, 461 F. Supp. 128, 136 n.12 (S.D.N.Y. 1978) (same). Courts have concluded that "for all practical purposes" the prosecution has "unlimited financial resources to bring to bear" in pursuing its case. *Robinson*, 2010 WL 3087446, at *6 (quoting *United States v. Ferguson*, 432 F. Supp. 2d 559, 567 (E.D. Va. 2006)). Without assuming the government carries a bottomless purse, the essence of this conclusion is a fair one.

This factor favors transfer.

### 8. Disruption to Defendant's Business is a Neutral Factor

Considering Mr. Prasad's only business was the alleged visa mill from which this case derives, and that business is now closed, this factor is neutral. *See* Mot. at 9 (acknowledging his business is now closed and this factor is no longer germane).

### 9. Docket Congestion Slightly Favors Transfer

It is no secret that the Eastern District of California carries one of the most congested dockets in the country. The Federal Court Management Statistics published by the Administrative Office of the Courts show that as of March 31, 2018,[1] there are only 6 judgeships in the Eastern District of California, compared to 14 in the Northern District, and that the average pending cases per judge is 1,229 in the Eastern District, compared to 683 cases in the Northern District; weighted filings per judgeship also are higher in the Eastern District. Felony criminal case filings specifically are higher as well, with 97 per judgeship in the Eastern District, and 38 in the Northern District. Nonetheless, the median time from filing to disposition for criminal felony cases in the two districts is comparable: 21.1 months in the Northern District and 22 months in the Eastern District, reflecting this district's overall good productivity although at a cost not measured by the numbers.

---

[1] http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0331.2018.pdf (last visited Aug. 2, 2018).

Regarding this case specifically, this judge has a criminal trial confirmed to start on September 4, 2018, and the likelihood of starting trial in this case on September 24, 2018, is low. Nonetheless, despite a number of other confirmed trials in Fall 2018, it appears this court would be able to make time to try this case within the time currently left on the Speedy Trial Act clock. 18 U.S.C. § 3161(h)(8) ("No continuance under subparagraph (A) of this paragraph shall be granted because of general congestion of the court's calendar").

On balance, this factor only slightly favors transfer.

### 10. Other Considerations Favor Transfer

Three additional considerations favor transfer. First, though not giving it great weight, the court considers Mr. Prasad's argument that his only family is in San Francisco. Reply at 2. If the trial remains here, it is not disputed that it would be inconvenient for Mr. Prasad's brother, whom Mr. Prasad characterizes as his primary support system, to attend his trial or otherwise support his defense. *Id.*; *cf. Radley*, 558 F.Supp.2d at 877 (finding transfer appropriate in part because it would be more "convenient" for defendants and their families); *United States v. Aronoff*, 463 F. Supp. 454, 454 (S.D.N.Y. 1978) (granting transfer in part because denying it would deny the defendant support from his family and friends). While the government suspects Mr. Prasad's brother of being involved in a suspicious transaction in which Mr. Prasad deposited and wired $400,000.00 to someone in India, *see* Opp'n at 6 n.2, its position does not nullify the familial bond.

Second, transfer would not waste judicial resources, as this court has yet to develop any substantive familiarity with the case. This is the first motion this court has heard, and save for a brief status conference in August 2017, this marks Mr. Prasad's first appearance before this court raising anything of substance related to the case. *See* Status Conf. Mins., ECF No. 23. Previously, the parties litigated only one motion, the government's motion to revoke pretrial release, which the assigned magistrate judge resolved in May 2018. *See* ECF Nos. 28, 30; *cf. Allen v. Scribner*, 812 F.2d 426, 436 (9th Cir. 1987) (affirming denial of motion to change venue in part because "the court's familiarity with the case after three and one-half years counseled against a change of venue.").

Third, nothing before this court suggests a venue change would likely cause any meaningful delay.

III. CONCLUSION

Guided by the *Platt* factors, this court is persuaded that the convenience of the parties and witnesses, and the interests of justice, support transfer to the Northern District of California.

IT IS SO ORDERED.

This resolves ECF No. 39. The Clerk of the Court is DIRECTED to promptly transfer this case to the Northern District of California, with the observation that assignment to a judge in San Francisco or San Jose may provide the most convenient venue for the parties and witnesses.

DATED: August 2, 2018.

_____
UNITED STATES DISTRICT JUDGE